**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Government,<br>      -against-<br><br>ALEX ULLOA,<br><br>                        Defendant. | 19-CR-707 (RMB)<br><br>**DECISION & ORDER** |

## I.  Background

On January 1, 2025, Defendant Alex Ulloa filed a *pro se* motion for sentence reduction (hereinafter "Def.'s Mot.") pursuant to the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A). *See* Def.'s Mot., dated Jan. 1, 2025, at 5 (ECF No. 95). Defendant Ulloa's motion relies upon "a medical condition that requires long-term or specialized medical care that is not being provided and without which [he is] at risk of serious deterioration in health or death." Def.'s Mot. at 5; U.S.S.G. § 1B1.13(b)(1)(C). Ulloa "request[s] compassionate release due to [his] debilitating conditions" which include, according to Defendant, "asthma," "hypertension," "blindness, one eye," "dermatitis," and "low back pain." Def.'s Mot. at 6. He claims these conditions "are not being fully addressed . . . by the medical department and can only be properly treated outside." *Id.* Defendant attaches records from his medical visits at the BOP medical facility on November 16, 2022 and April 6, 2023. *See* Def.'s Med. Rec.

The Government opposes Defendant's motion, *see* Gov't Letter Resp., dated Jan. 29, 2025, at 1 (ECF No. 97), and contends that Ulloa "has failed to demonstrate the existence of extraordinary and compelling reasons justifying a reduction in sentence." *Id.* The Government asserts that "[t]he medical records Ulloa attached to his motion indicate that his conditions **are** being treated by BOP medical officials." *Id.* at 4 (emphasis added); Def's Med. Rec. at 2–4

1

(demonstrating that Ulloa had medical "assessment[s]," "labs drawn," "medication orders," and "follow-up" medical appointments). According to the Government, Ulloa's "motion fails to articulate exactly which health conditions he is suffering from and the manner in which those conditions are not being properly treated in a prison setting." Gov't Letter Resp. at 4. The Government also states that "the Section 3553(a) factors weigh heavily against any reduction in the sentence this Court imposed three years ago." *Id.*

On February 14, 2025, Ulloa filed a reply to the Government's response, *see* Def.'s Reply, dated Feb. 14, 2025 (ECF No. 98), stating that "the Government's confidence in the Bureau of Prison's (BOP) medical care does not match their own Inspector General's reports." *Id.* at 2. Ulloa refers to two reports published by the Department of Justice Office of the Inspector General ("OIG"). *Id.* at 2–3; *see* DEP'T OF JUST. OFF. OF THE INSPECTOR GEN., AUDIT OF THE FEDERAL BUREAU OF PRISONS' CONTRACT AWARDED TO THE AMERICAN CORRECTIONAL ASSOCIATION (Nov. 2023) (hereinafter "OIG Report 1"); *see also* DEP'T OF JUST. OFF. OF THE INSPECTOR GEN., EVALUATION OF ISSUES SURROUNDING INMATE DEATHS IN FEDERAL BUREAU OF PRISONS INSTITUTIONS (Feb. 2024) (hereinafter "OIG Report 2"). Ulloa's reply also states that "[t]he 3553(a) factors favor the petitioner per the BOP's own assessment." *Id.* at 5. Ulloa contends that he "is housed at a FCI-satellite camp" and "he has the designation of 'out custody' according to the BOP's own assessment of the level of prison supervision required." *Id.* Ulloa also points out that "every inmate within the BOP is assessed with a PATTERN [Prisoner Assessment Tool Targeting Estimated Risk and Needs] score which determines a risk of recidivism," *id.* at 6, and that "[t]hese assessments are made and updated every six months" and "depend on inmate's disciplinary records, programming, educational and vocational participation, prison jobs records, and living skills." *Id.* According to Ulloa, his "PATTERN score is at the minimum level" and his "designation was done by the facility's case management staff who see the petitioner every day."

*Id.* Ulloa attaches learning certificates reflecting course completions and a transcript reflecting some 40 courses. *Id.* at 9–13.

By way of background, on December 14, 2021, Ulloa was sentenced to a statutory mandatory minimum sentence of 120 months of imprisonment followed by 5 years of supervised release. Judgment, dated Dec. 14, 2021, at 1 (ECF No. 75). He had pled guilty on March 10, 2021 to one count of "conspiracy to distribute and possess with intent to distribute cocaine" in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(A)(1). *Id.* at 1. Ulloa's guidelines range was 135 to 168 months based upon an offense level of 33 and a criminal history category of I. *See* Presentence Investigation Report, dated May 4, 2021 ("PSR"), at 15 (ECF No. 54).

**For the reasons set forth below, Defendant's motion is respectfully denied.**

## II.     Legal Standard

Under 18 U.S.C. § 3582(c)(1)(A), a court may grant a motion for compassionate release "if (1) the defendant has exhausted available administrative remedies, (2) extraordinary and compelling reasons warrant a reduction, and (3) the § 3553(a) sentencing factors favor a reduction." *United States v. Robinson*, No. 23-6150, 2024 WL 4262955, at *1 (2d Cir. Sept. 23, 2024) (citing 18 U.S.C. § 3582(c)(1)(A)).

A defendant seeking a sentence reduction under U.S.S.G. § 1B1.13(b)(1)(C) must show that (1) "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care"; (2) medical care is "not being provided"; and (3) "the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C); *United States v. Radulescu*, No. 19 Cr. 651 (SHS), 2024 WL 4200388, at *1 (S.D.N.Y. Sept. 16, 2024); *see United States v. Pouryan*, No. 11 Cr. 111-6 (NRB), 2025 WL 521379, at *3 (S.D.N.Y. Feb. 18, 2025) (where defendant did "not provide a sufficiently extraordinary or compelling basis for compassionate release").

### III. Analysis

**Defendant Has Exhausted His Administrative Remedies**

Under Section 3582(c)(1)(A), a petitioner may obtain a sentence reduction only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021); *see also United States v. Haney*, 454 F. Supp. 3d 316, 321 (S.D.N.Y. 2020).

Ulloa has submitted a request for compassionate release to the warden of FCI Fort Dix on September 25, 2024. *See* Def.'s Mot. at 3. However, "the warden denied [his] request on November 7, 2024." *Id.* The Court finds that Ulloa has exhausted his administrative remedies. *See Saladino*, 7 F.4th at 124; *see also Haney*, 454 F. Supp. 3d at 321.

**Defendant's Motion Does Not Establish Extraordinary or Compelling Medical Reasons**

*i. Defendant's Medical Conditions*

Defendant Ulloa's compassionate release motion relies primarily upon medical conditions which he claims "are not being fully addressed . . . by the medical department and can only be properly treated outside." Def.'s Mot. at 5, 6 (citing U.S.S.G. § 1B1.13(b)(1)(C)). Ulloa complains of "asthma," "hypertension," "blindness, one eye," "dermatitis," and "low back pain." Def.'s Mot. at 6. Defendant's medical records reflect, among other things, "inhaler[s]" to "prevent/relieve asthma attack[s]" and "renew[ed] medication orders" for tablets to "control [his] blood pressure." Def's Med. Rec., at 2–4. Ulloa's medication orders also include a solution to "clean [his] eye" and

4

a topical cream to treat his dermatitis. *Id.* Defendant's medical records also reflect "assessment[s]," "labs drawn," and "follow-up" appointments. *Id.*

As the Government states, "Ulloa has been prescribed medication and appears to have access to medical treatment." Gov't Letter Resp. at 4; *see United States v. Zubkov*, 460 F. Supp. 3d 450, 455 (S.D.N.Y. 2020) (denying compassionate release where petitioner "appears to have received proper medical attention and care"); *see also Radulescu*, 2024 WL 4200388, at *1 (finding no extraordinary or compelling reason(s) for release under U.S.S.G. § 1B1.13(b)(1)(C) where defendant had not "demonstrate[d] that the BOP is unable to care for an inmate with [his] conditions").

### ii. *Defendant's Reliance Upon OIG Reports*

As noted, Ulloa cites to two OIG reports to challenge the Government's claim that he "is receiving proper medical treatment from the BOP's medical department." Def.'s Reply, at 2; *see also* Gov't Letter Resp. at 4. The reports include the OIG "Audit of the Federal Bureau of Prisons' Contract Awarded to the American Correctional Association" and the OIG "Evaluation of Issues Surrounding Inmate Deaths in Federal Bureau of Prisons Institutions."

Ulloa asserts that the Office of Inspector General "found the BOP was in collusion with the American Correctional Association (ACA) to receive false accreditations for its facilities and in particular its medical treatment." Def.'s Reply at 2. Relying upon OIG Report 1, published November 16, 2023, Defendant contends that a contract the BOP awarded to the ACA in 2018 to obtain accreditation and reaccreditation for BOP facilities and that the ACA "ha[d] not been performing its reaccreditation reviews consistent with ACA's policy manual, as provided for in the December 2018 contract. Instead, when completing reaccreditation reviews, ACA relied on the

BOP's internal program review reports and neither performed its own independent review of the BOP facility's operations." OIG Report 1 at i, 8.

With respect to OIG Report 2, Ulloa claims that the OIG "blast[ed] the BOP's negligence in preventing inmate deaths" and "identified deficiencies in staff completion of inmate assessments and found inappropriate mental and health care level assignments for inmates." Def.'s Reply at 3. According to Defendant, the OIG Report 2, published February 15, 2024, "assess[ed] deaths among inmates in federal custody in four categories and to determine how the BOP seeks to prevent such deaths in the future. Those four categories are: (1) suicide, (2) homicide, (3) accident, and (4) manner of death unknown." OIG Report 2 at 2. Also, according to Defendant, the OIG's "review of records provided by the BOP identified a total of 344 inmate deaths at BOP institutions from FYs 2014 through 2021." *Id.* at 7. "Deaths by suicide comprised the majority of inmate deaths, followed by death by homicide." *Id.*

While the Court takes notice of the two OIG reports referenced by Ulloa, "generalized statements about prison conditions untethered to compelling specifics of [a] defendant's particular circumstances do not make the defendant's conditions 'extraordinary and compelling.'" *United States v. Santana*, No. 12 Cr. 790 (PAE), 2023 WL 2625790, at *4 (S.D.N.Y Mar. 24, 2023); *see also United States v. Cave*, No. 18 Cr. 689-1 (AT), 2024 WL 3888737, at *4 (S.D.N.Y. Aug. 21, 2024) (denying a motion for compassionate release when the defendant's "circumstances in the aggregate . . . are not 'similar in gravity' to those explicitly enumerated in the Guidelines' compassionate release policy statement"). The Court finds that Defendant does not show that the OIG's findings affect his "particular circumstances." *Santana*, 2023 WL 2625790, at *4.

### iii. Rehabilitation

The Court commends Ulloa for his successful completion of numerous educational courses and for receiving the a PATTERN score "at the minimum level." Def.'s Reply at 6, 9–13. Although

"[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason, courts may consider it as a factor . . . in determining if there are extraordinary and compelling reasons for compassionate release." *Cave*, 2024 WL 3888737, at *4. In any event, the Court finds that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" for a sentence reduction. U.S.S.G. § 1B1.13(d); *see United States v. Raposo*, No. 98 Cr. 185 (JPC), 2024 WL 165195, at *9 (S.D.N.Y. Jan. 16, 2024).

### Section 3553(a) Factors Weigh Against A Sentence Reduction

"[T]he District Court's reasonable evaluation of the Section 3553(a) factors is an alternative and independent basis for denial of compassionate release." *Robinson*, 848 F. App'x at 478. Here, the Section 3553(a) factors weigh heavily against a sentence reduction. Pursuant to Section 3553(a), the court

> shall consider the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effect manner.

18 U.S.C. § 3553(a)(2).

Having considered all of the 3553(a) factors, the Court concludes that Ulloa's motion must be denied. Ulloa was "knowing[ly] involv[ed] in a high-volume narcotic trafficking" operation. *See* Sent'g Tr., dated Dec. 14, 2021, at 8:17–19. Law enforcement seized 22.85 kilos of cocaine, approximately $200,000 in cash, a firearm, 20 rounds of ammunition, cutting agents for narcotics, presses, a currency counter, and plastic wrappers from Ulloa's residence. *See* PSR at 6–7. At sentencing on December 14, 2021, the Court underscored that Defendant's drug trafficking crime was "incredibly **serious [and dangerous]** to the immediate and even more far-flung community." Sent'g Tr. at 8:23–25; *see Robinson*, 848 F. App'x at 478 (where defendant's conduct was serious

7

and "gravely endangered the community"). As the Court also notes, Defendant in his Plea Agreement "consented to a two-level enhancement because a firearm was possessed." *Id.* at 5:5–7. The Defendant's sentence of 120 months "promotes **respect for the law** [and] provides a **just punishment**." *Id.* at 19:9–10. *See United States v. Samuels*, No. 08-cr-789-6 (RJS), 2023 WL 5003344, at *2 (S.D.N.Y. Aug. 4, 2023). It should also be noted that, although the Guideline range was 135 to 168 months, the Court imposed a 120 month sentence "in consideration of Mr. Ulloa's efforts while he's been incarcerated, in particular to turn his life around and pursue meaningful courses and education." Sent'g Tr. at 18:23–25; 19:1–3.

**Deterrence** is also an important 3553(a) factor in this case. There is a need generally to deter drug trafficking crimes, especially when firearms are involved. *See United States v. Moyhernandez*, No. 97 Cr. 197 (LAP), 2023 WL 8368857, at *3 (S.D.N.Y. Dec. 4, 2023) ("Even mere possession of a gun 'greatly increases one's ability to inflict harm on others and therefore involves some risk of violence . . .'") (citing *United States v. Dillard*, 214 F.3d 88, 93 (2d Cir. 2000)). Moreover, "there is an acute need for a strong message of general deterrence, which remains as relevant today as it was when the Defendant was initially sentenced." *Moyhernandez*, 2023 WL 8368857, at *3. A Section 3582(c)(1)(A) reduction would undermine the deterrent objective of the original sentence. *See United States v. Jones*, 17 F.4th 371, 375–76 (2d Cir. 2021) (per curiam); *see also United States v. Davis*, 82 F.4th 190, 202 (2d Cir. 2023) (general deterrence "is about preventing criminal behavior by the population at large . . ."). It is the goal here "of having a specific conviction and sentence discourage people from committing crimes." *Black's Law Dictionary* (12th ed. 2024).

The Court also believes that Ulloa's 120 month sentence was appropriate to deter Defendant from further drug trafficking. *See Moyhernandez*, 2023 WL 8368857, at *3; *see also*

*United States v. Hueston*, No. 14 Cr. 332 (PAE), 2020 WL 3472253, at *3 (S.D.N.Y. June 25, 2020) (finding that "specific deterrence necessitated a meaningful sentence along the lines of the sentence imposed" in order to serve as "an effective wake-up call" for the Defendant's drug trafficking crime).

Defendant's 120 month sentence was also designed to "**protect the public** from further crimes of the Defendant." 18 U.S.C. § 3553(a)(2)(C). Law enforcement seized nearly 23 kilos of cocaine and a firearm from Defendant's apartment. *See* PSR at 6–7. As the Government notes, "[c]ocaine is highly addictive and can be deadly, harming individuals, families, and communities." Gov't Letter Resp. at 5. At sentencing, the Court emphasized that the "scourge of drugs" is "a huge danger to the community and even to persons who are involved in the conspiracy." Sent'g Tr. at 9:13–19.

In sum, while the 3553(a) factors weigh against a sentence reduction, Ulloa is to be commended for completing educational courses and having no disciplinary incidents while incarcerated. *See* Def.'s Reply at 6, 9–13.

## IV.   Conclusion & Order

For the reasons stated above, and based upon the record, Defendant's motion for a sentence reduction (ECF No. 95) is respectfully denied.

Date: April 17, 2025
New York, New York

*RMB* (signature)
RICHARD M. BERMAN, U.S.D.J.